HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HAMISH THOMAS ANDERSON, et al.,

                    Plaintiffs,

        v.

CITY OF BELLEVUE, et al.,

                    Defendants.

CASE NO. C11-744 RAJ

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

This matter comes before the court on motions for summary judgment by defendants King County, Julie Cook, and Mark Larson ("KC Defendants") (Dkt. # 25) and defendants City of Bellevue, Cheryl Zakrzewski, and Lori Riordan ("Bellevue Defendants") (Dkt. # 31).  Plaintiffs Hamish Thomas Anderson and Hamish Anderson Custom Homes, Inc. allege claims for violation of procedural due process pursuant to 42 U.S.C. § 1983, abuse of process, and outrage against all defendants.  Dkt. # 1.  Plaintiffs also allege a claim of negligent training and/or supervision against the City of Bellevue and King County.  *Id.*  KC Defendants and Bellevue Defendants essentially make the

1   same arguments:  (1) the individual defendants are entitled to qualified immunity,[1] (2)

2   plaintiffs cannot show a constitutional deprivation, (3) plaintiffs' claims are an improper

3   collateral attack on the dismissal order in the criminal proceeding, (4) judicial estoppel

4   bars plaintiffs' claims, and (5) plaintiffs cannot establish liability for City of Bellevue or

5   King County.  Dkt. # 25, # 31.  The Bellevue Defendants also argue that plaintiffs cannot

6   prove abuse of process or outrage.  Dkt. # 31.  Defendants also seek their attorney's fees.

7         Having considered the memoranda, exhibits, oral argument, and the record herein,

8   the court GRANTS the defendants' motions for summary judgment.

## II. BACKGROUND

10         In 2007, eight big leaf maple trees were cut down near Anderson's property line.[2]

11   Dkt. # 34 ¶ 6.  These trees were on City of Bellevue property.  *Id.*  The Bellevue Police

12   Department investigated the illegal tree cutting.  Dkt. # 33-1 (Ex. A to Kerslake Decl.,

13   Cert. of Probable Cause).  The City of Bellevue initiated a civil enforcement proceeding

14   pursuant to Bellevue City Code ("BCC") 3.43.335.[3]  Dkt. # 32 (Zakrzewski Decl.) ¶ 7.

15   Defendant Zakrzewski was the Assistant City Attorney handling the civil action.  Dkt. #

16   32 (Zakrzewski Decl.) ¶¶ 8-9.   In January 2008, the investigating officer determined that

17   Anderson, who was developing the property next door to the city, had sold the trees for

18   profit and that there was probable cause that Anderson was responsible for the damage

19   and theft to city property.  *Id.* at 4.  Thereafter, King County filed an Information

20   charging Anderson with the crime of theft in the second degree.  Dkt. # 28-3 at 6 (Ex. 3

---

[1] The individual KC Defendants also argue that they are entitled to absolute prosecutorial immunity.

[2] The parties dispute whether Anderson knew and gave the order to cut the trees outside of his property line.  This disputed fact is irrelevant to the court's analysis.

[3] BCC 3.43.335 provides:  "A.  It shall be unlawful for any person to clear, cut, damage or remove any tree or vegetation located on property owned or leased by the city without the express written permission of the city manager or his or her designee.  B.  Violation of this section is a civil violation under Chapter 1.18 BCC, subject to penalties set forth in BCC 1.18.045."  BCC 1.18.045 provides that the monetary penalty for illegal tree removal is the greater of $500 for each tree damaged, or triple the value of each tree damaged.

1    to Larson Decl., Information).  Defendant Larson made the decision to charge Anderson,

2    and he served as the supervisor to the prosecutor assigned to the case.  Dkt. # 28 (Larson

3    Decl.) ¶¶ 3-4, 7-10.  Defendant Cook was assigned to handle the plea negotiations in

4    Anderson's criminal case.  Dkt. # 27 (Cook Decl.) ¶¶ 3-5.

5          Anderson's attorney, Russel Aoki, contacted Cook requesting that the criminal

6    case against Anderson be dismissed without prejudice to allow the civil matter to be

7    resolved.  Dkt. # 27-2 at 4 (Ex. 5 to Cook Decl.).  Cook contacted the City of Bellevue,

8    seeking an acceptable resolution with the City that involved Anderson paying restitution.

9    Dkt. # 27-1 at 14 (Ex. 4 to Cook Decl.).  A simple restitution for the value of the trees

10   was not acceptable to the City of Bellevue because under the city code, it could pursue

11   treble damages.  Dkt. # 27-1 at 15 (Ex. 4 to Cook Decl.).  Zakrzewski requested specific

12   language to be included in the order of dismissal, but that language was unacceptable to

13   Mr. Aoki.  *Id.* at 16.  Ultimately, no plea agreement was reached, but Cook dismissed the

14   criminal case without prejudice using the language requested by Zakrzewski.  *Id.* at 2

15   (Ex. 1), 9 (Ex. 2), 18-19 (Ex. 4).  At the request of the Hearing Examiner in the civil case,

16   the dismissal order was presented to him.  Dkt. # 48 (2d Zakrzewski Decl.) ¶ 6.  The civil

17   case proceeded to mediation, and the parties ultimately settled.  *Id.* ¶ 7; Dkt. # 26 at 6

18   (Ex. 2 to Gosselin Decl.).

19                              **III. ANALYSIS**

20         Summary judgment is appropriate if there is no genuine dispute as to any material

21   fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

22   56(a).  The moving party bears the initial burden of demonstrating the absence of a

23   genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

24   Where the moving party will have the burden of proof at trial, it must affirmatively

25   demonstrate that no reasonable trier of fact could find other than for the moving party.

26   *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  On an issue where the

27   nonmoving party will bear the burden of proof at trial, the moving party can prevail

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT- 3

1   merely by pointing out to the district court that there is an absence of evidence to support

2   the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets

3   the initial burden, the opposing party must set forth specific facts showing that there is a

4   genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby,*

5   *Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most

6   favorable to the nonmoving party and draw all reasonable inferences in that party's favor.

7   *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

8   **A.    42 U.S.C. § 1983**

9       1.    Absolute Prosecutorial Immunity

10       Prosecutors are absolutely immune from liability under section 1983 for conduct

11   that is "intimately associated with the judicial phase of the criminal process."  *Imbler v.*

12   *Pachtman*, 424 U.S. 409, 431 (1976); *Botello v. Gammick*, 413 F.3d 971, 975 (9th Cir.

13   2005).  However, when prosecutors perform administrative or other investigative

14   functions, only qualified immunity is available.  *Botello*, 413 F.3d at 975-76.  To

15   determine whether an action is judicial, administrative or investigative, the court looks at

16   the nature of the function performed.  *Id.* at 976.  The official seeking absolute immunity

17   bears the burden of demonstrating that absolute immunity is justified for the function in

18   question.  *Id.*  Absolute prosecutorial immunity is justified only for actions that are

19   connected with the prosecutor's role in judicial proceedings, not for every litigation-

20   inducing conduct.  *Id.*  It is well established that a prosecutor has absolute immunity for

21   the decision to prosecute or not to prosecute a particular case.  *Id.*

22       KC Defendants argue that Larson and Cook are entitled to absolute immunity

23   because their conduct in initiating charges, negotiating with interested parties, and

24   presenting a motion and order of dismissal that stated the position on re-filing criminal

25   charges is among a prosecutor's core function.  Dkt. # 25 at 10-11.  Plaintiffs argue that

26   (1) issuing a threat to influence a civil proceeding is not a prosecutorial function, and (2)

27

1  attempting to exert influence outside of the criminal judicial process is not protected by

2  absolute immunity.[4]  Dkt. # 40 at 12-15.

3        With respect to the first argument, plaintiffs argue that the motion and order of

4  dismissal was not "routine" because Cook edited a stock form dismissal after consulting

5  with her supervisors and using language that the Bellevue Defendants requested.

6  Whether an order is "routine" is not the proper inquiry for determining the nature of the

7  function performed.  The court finds that editing a stock motion and order of dismissal

8  and presenting it to the court requires the exercise of professional judgment, and is thus

9  integral to a prosecutor's role in a judicial proceeding.  *See Kalina v. Fletcher*, 522 U.S.

10  118, 130 (1997) (finding as integral to the initiation of prosecution an attorney's drafting

11  of the certification, determination that evidence was sufficiently strong to justify a

12  probable-cause finding, decision to file charges, and presentation of the information and

13  motion to the court, each of which involved the exercise of professional judgment).

14        The motion and certification and order of dismissal provides:

15        Pursuant to ongoing plea negotiations and equitable considerations, the
16        State has elected to dismiss this case and forego criminal prosecution at this
17        time.  The State will not re-file charges upon proof that the defendant has
18        made payment of restitution and compensation to the City of Bellevue
           consistent with the terms and penalties set forth under the Bellevue City
18        Code (1.18.045).  If the defendant fails to pay restitution as set forth above,
19        the State will re-file charges and proceed with prosecution.

20  Dkt. # 27-1 at 11 (Ex. 3 to Cook Decl.).

21        On September 4, 2008, Mr. Aoki contacted Cook requesting that the case against

22  Anderson be dismissed without prejudice to allow the civil matter to be resolved.  Dkt. #

23  27-2 at 4 (Ex. 5 to Cook Decl.).  Mr. Aoki stated:  "If, after the civil matter is resolved,

24  the State feels the civil resolution is unsatisfactory, it would still be able to reconsider

25

26        [4] Plaintiffs' only argument with respect to Larson is that Cook decided to revise the stock
27  dismissal agreement after consulting with her "supervisors" and that Larson agreed to make the
    changes.

1   criminal charges." *Id.*  On September 22, 2008, Cook contacted the City of Bellevue,

2   stating that the King County Prosecutor's office was not inclined to prosecute if there was

3   an acceptable resolution with the City that involved Anderson paying restitution.  Dkt. #

4   27-1 at 14 (Ex. 4 to Cook Decl.).  Plaintiffs do not dispute that it is common for

5   prosecutors to consult with victims of crimes at the plea or dismissal phase of a trial.  *See*

6   Dkt. # 27 (Cook Decl.) ¶ 10; # 28 (Larson Decl.) ¶ 11.

7          On October 7, 2008, Mr. Aoki wrote Cook clarifying that Anderson would be

8   willing to pay restitution for the amount calculated for the criminal charge as a condition

9   of dismissal, but that he was not in a position to agree to payment in the civil claim by the

10   City of Bellevue.  Dkt. # 27-3 at 12 (Ex. 5 to Cook Decl.).  On October 15, 2008,

11   Zakrzewski informed Cook that a simple restitution for the value of the trees as part of a

12   dismissal of the criminal proceedings would not alleviate the need for the civil infraction

13   hearing.  Dkt. # 27-1 at 15 (Ex. 4 to Cook Decl.).  She stated that in "order to resolve

14   both the civil infraction hearing and the pending criminal charges, Hamish Anderson

15   would have 'to agree to pay an amount in restitution and compensation to the City of

16   Bellevue consistent with the terms and penalties set forth under the Bellevue City Code

17   (1.18.045).'"  *Id.*  Mr. Aoki expressed concern with the proposed language because of

18   concerns that Anderson's insurance company would deny coverage if Anderson conceded

19   that he owed restitution.  *Id.* at 16.  Ultimately, no plea agreement was reached, but Cook

20   still dismissed the criminal case using the language requested by Zakrzewski.  *Id.* at 2

21   (Ex. 1), 9 (Ex. 2), 18-19 (Ex. 4).  The criminal case was dismissed without prejudice.

22          Given the factual context, the statement that charges will be re-filed if Anderson

23   failed to pay restitution cannot reasonably be interpreted to be a threat to influence the

24   civil action.  Rather, it provides the circumstances under which civil resolution would be

25   unsatisfactory.  Even if Cook and Larson had an improper motive to influence the civil

26   action when they drafted and presented the motion and order of dismissal to the court,

27   they still would be entitled to absolute prosecutorial immunity.  *See Rehberg v. Paulk*,

1  611 F.3d 828, 851 (11th Cir. 2010) (prosecutor receives full scope of absolute

2  prosecutorial immunity for claims of malicious prosecution, presentation of perjured

3  testimony to a grand jury, and participation in conspiracy to fabricate grand jury

4  testimony).

5       With respect to the second argument, plaintiffs rely on *Botello* in arguing that

6  conduct that is designed to affect something outside of the judicial criminal process has

7  been denied absolute immunity.  Dkt. # 40 at 14.  Plaintiffs' reliance on *Botello* is

8  misplaced.  In *Botello*, the Ninth Circuit identified three separate categories of conduct of

9  the prosecutors:  (1) their communications to the School Police Department in an effort to

10  dissuade it from hiring Botello, (2) their decision not to prosecute cases in which Botello

11  had participated in any phase of the investigation process, and (3) their communications

12  to the School Police Department insisting that Botello be barred from all stages of the

13  investigative process.  413 F.3d at 977.  The court found that only the second category of

14  conduct was entitled to absolute immunity, even though it gave the Ninth Circuit pause.

15  *Id.*  The court found that the other two categories had no connection to the judicial

16  process.  *Id.*  In contrast, Cook's decision to draft language for the motion and order of

17  dismissal that was then presented to the court is intimately tied to the judicial process.

18       Plaintiffs also argue that Cook made a false statement in the motion and order of

19  dismissal, and therefore is not entitled to absolute immunity.  Dkt. # 40 at 15.  Plaintiffs

20  seem to take issue with the term "ongoing" in "[p]ursuant to ongoing plea negotiations."

21  First, the statement "[p]ursuant to ongoing plea negotiations" does not appear to be a

22  false statement given that communications regarding the dismissal of the criminal

23  charges between Mr. Aoki and Cook continued through the dismissal.[5]  Dkt. # 27-1 at 2,

24  9 (Exs. 1, 2 to Cook Decl.).  Second, even if the statement was false, that is not a basis to

25

26

27       [5] The court notes the complete absence of a declaration by Mr. Aoki regarding his
         perception of the plea negotiations and order of dismissal.

1   deny absolute immunity.  The case relied on by plaintiffs for the proposition that a

2   prosecutor is not entitled to absolute immunity when he or she swears to false factual

3   statements is not applicable here.  In *Kalina*, the prosecutor signed the certification for

4   determination of probable cause.  522 U.S. at 129.  "In doing so, [she] performed an act

5   that any competent witness might have performed." *Id.* at 129-30.  The Court noted:

> Testifying about facts is the function of the witness, not of the lawyer.  No
> matter how brief or succinct it may be, the evidentiary component of an
> application for an arrest warrant is a distinct and essential predicate for a
> finding of probable cause.  Even when the person who makes the
> constitutionally required "Oath or affirmation" is a lawyer, the only
> function that she performs in giving sworn testimony is that of a witness.

*Id.* at 130-31.

    Here, Cook did not testify to any similar facts that would turn her into a fact

witness under *Karina*.  Indeed, it is undisputed that "[m]otions to dismiss are routinely

submitted in the form of a declaration under oath" and that the "declaration is intended to

inform the court of the reasons for the prosecutor's decision in the particular case." Dkt.

# 27 (Cook Decl.) ¶ 9.  This conduct requires the exercise of professional judgment and is

intimately tied to the judicial process.

    Accordingly, the court finds that Cook and Larson are entitled to absolute

prosecutorial immunity.  Having found that Cook and Larson are entitled to absolute

prosecutorial immunity, the court need not address whether they are also entitled to

qualified immunity.

    2.    Qualified Immunity

    The "doctrine of qualified immunity protects government officials 'from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'"  *Mattos v.*

*Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223,

231 (2009)).  "The purpose of qualified immunity is to strike a balance between the

1    competing 'need to hold public officials accountable when they exercise power

2    irresponsibly and the need to shield officials from harassment, distraction, and liability

3    when they perform their duties reasonably.'" *Id.* Whether the officials are entitled to

4    qualified immunity depends on (1) whether the facts that the plaintiffs have alleged or

5    shown make out a constitutional violation and, (2) if so, whether the constitutional right

6    at issue was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S.

7    194, 201 (2001).[6]

8           Plaintiffs argue that defendants Zakrzewski and Riordan violated Anderson's

9    procedural due process rights by (1) using the criminal action to influence the outcome of

10   the civil enforcement action, (2) delivering the "threat" of re-prosecution to the hearing

11   examiner in the civil action if he did not pay restitution, and (3) misrepresenting

12   Zakrzewski's interaction with the King County Prosecutor's Office to the hearing

13   examiner. Dkt. # 43 at 10-11. Plaintiffs argue that the process due to Anderson is

14   statutorily defined under BCC 1.18.150, which entitled Anderson to a full and fair

15   hearing before an impartial hearing examiner. *Id.* at 10.

16          With respect to the first argument, plaintiffs argue that the City of Bellevue

17   effectively relieved itself of meeting a statutorily imposed burden under BCC 1.18.050

18   "by drafting – and insisting upon the KCPO's adherence to – language that threatened

19   that if Anderson exercised his constitutionally protected rights in the civil proceeding,

20   and was successful, the criminal action would be re-filed." *Id.* The undisputed evidence

21   does not support plaintiffs' hyperbolic arguments. Rather, Anderson's counsel contacted

22   Cook and requested that she dismiss the criminal case without prejudice pending

23   resolution of the civil case. Dkt. # 27-2 at 4 (Ex. 5 to Cook Decl.). Indeed, Mr. Aoki

24   acknowledged that "[i]f, after the civil matter is resolved, the State feels the civil

---

26   [6] The Supreme Court modified *Saucier* in *Pearson*, 555 U.S. at 236. Under *Pearson*, the
27   decisional sequence is no longer mandatory. Here, the court concludes that the *Saucier* analysis,
     although no longer required, is appropriate.

1  resolution is unsatisfactory, it would still be able to reconsider criminal charges." *Id.*

2  Cook expressed to the City of Bellevue, the victim of the crime, that she was not inclined

3  to prosecute if there was an acceptable resolution involving restitution.  Dkt. # 27-1 at 14

4  (Ex. 4 to Cook Decl.).  Zakrzewski's response was that a simple restitution for the value

5  of the trees as part of a dismissal of the criminal proceedings would not alleviate the need

6  for the civil infraction hearing.  Dkt. # 27-1 at 15 (Ex. 4 to Cook Decl.).  She stated that

7  in "order to resolve <u>both</u> the civil infraction hearing and the pending criminal charges,

8  Hamish Anderson would have 'to agree to pay an amount in restitution and compensation

9  to the City of Bellevue consistent with the terms and penalties set forth under the

10  Bellevue City Code (1.18.045).'"  *Id.* (emphasis added).  Ultimately, Cook decided to

11  dismiss the criminal case without prejudice, despite Zakrzewski's desire that the criminal

12  prosecution continue absent immediate restitution.  *Id.* at 26.  After dismissal of the

13  criminal case, the civil case continued, and the parties ultimately settled the dispute.[7]

14      With respect to the second argument, the court finds that there was no "threat."

15  Rather, Zakrzewski, as a representative of the crime victim, communicated the desired

16  outcome.  Cook then provided the circumstances under which she would re-file criminal

17  charges in the motion and order for dismissal (non-payment of restitution).  As noted

18

19

20      [7] Plaintiffs rely on the Declaration of Robert Aronson, a purported expert on professional
    ethics.  Defendants have not moved to strike Professor Aronson's declaration and purported

21  findings as improper expert testimony.  Nevertheless, the court may only consider admissible
    evidence on a motion for summary judgment.  The court finds that Professor Aronson's

22  specialized knowledge in professional ethics will not "help the trier of fact to understand the
    evidence or to determine a fact in issue."  Fed. R. Evid. 702(a) (2011).  This is particularly true

23  where Professor Aronson failed to identify a specific ethical violation and provided the court
    with little more than conclusory observations.  It is also unclear to the court whether Professor

24  Aronson's testimony was "based on sufficient facts or data" (Fed. R. Evid. 702(b)), because,
    although he states he has reviewed "relevant" correspondence and documents, the court has no

25  basis to determine whether he was provided the full correspondence file.  Professor Aronson's
    purported expert opinion that Zakrzewski violated her ethical duty also will not assist a trier of

26  fact to understand the evidence or to determine a fact in issue, where plaintiffs have not provided
    any legal authority that the alleged ethical violations rise to the level of a constitutional violation.

27

above, Mr. Aoki, on behalf of Anderson, explicitly acknowledged that if King County felt that the civil resolution was unsatisfactory, it would still be able to bring criminal charges.  Dkt. # 27-2 at 4 (Ex. 5 to Cook Decl.).

With respect to the third argument, plaintiffs argue that Zakrzewski misrepresented her interaction with the King County Prosecutor's Office to the hearing examiner.  Dkt. # 43 at 11.  In that letter, Zakrzewski states:

> First, I must again correct the misconception that the civil division of the Bellevue City Attorney's Office has any control or power over the decisions of the King County Prosecutor's Office or the Bellevue Prosecutor's Office to bring criminal charges.  Both of those entities operate totally independently from the civil division of the Bellevue City Attorney's Office.  It would be improper for the civil division of Bellevue City Attorney's Office to attempt to direct the operation of either of those other offices.  It would also be unethical for either of those prosecutorial offices to allow an outcome in a civil proceeding to influence how they choose to proceed.  Furthermore, while the City is the victim of this crime, this status imparts no standing upon the City to direct whether the prosecutor initiates or continues with a prosecution.  Those decisions are made based upon the strength of the case and the interests of justice – not upon the whims of a victim or other witness.

Dkt. # 44-1 at 29 (Ex. 7 to Shea Decl. iso Opp'n to Bellevue Defs.).

The court notes that this statement may be interpreted to be inconsistent with Zakrzewski's prior communication to Cook in which she commented "it looks like you will not be able to enter into any type of deal with Anderson.  If he cannot agree to anything and needs an order to pay restitution, it looks like he is choosing to go to trial."  Dkt. # 27-1 at 17 (Ex. 4 to Cook Decl.).  However, even if the court took as true that Zakrzewski misrepresented her interaction to the hearing examiner, plaintiffs still have not made a showing of a constitutional violation.  Cook still dismissed the criminal case without prejudice, despite Zakrzewski's opposition to dismissal.  Plaintiffs proceeded in the civil action and settled the case for less than the amount of treble damages sought by the City of Bellevue.

1    Given the factual circumstances present here, plaintiffs have failed to demonstrate

2    that Zakrzewski and Riordan[8] violated plaintiffs' procedural due process rights.[9]  Having

3    found that plaintiffs have failed to make out a constitutional violation, the court need not

4    determine whether the right was clearly established.

5    However, even if the court considered whether the right was clearly established,

6    the court would find that it was not because there is no clearly established statutory or

7    constitutional right prohibiting prosecutors from using criminal charges to influence

8    payment of restitution in civil proceedings.  *See Town of Newton v. Rumery*, 480 U.S.

9    386, 394 (1987) (upholding a release-dismissal agreement in which defendant agreed to

10   voluntarily waive his right to sue under section 1983 in exchange for escaping criminal

11   prosecution); *State v. Moen*, 150 Wn. 2d 221, 229, 76 P.3d 721 (2003) (plea bargain valid

12   where prosecutor conditioned plea bargain on defendant's agreement not to seek certain

13   information in a civil forfeiture action against defendant).  Plaintiffs' reliance on

14   *MacDonald v. Musick*, 425 F.2d 373 (9th Cir. 1970) is misplaced.  That court held that a

15   prosecutor cannot condition a voluntary dismissal of a charge upon stipulation by the

16   defendant that is designed to forestall the <u>defendant's</u> civil rights case against police

17   officers, even where the civil rights case arise from the events that are the basis for the

18   criminal charge.  *Id.* at 375.  Anderson did not have a civil rights case against the City of

19   Bellevue.  Rather, the City of Bellevue had a civil action against Anderson for an alleged

20   _____

21       [8] Plaintiffs state that they have not had the opportunity to obtain additional discovery

22   regarding Riordan's involvement. Dkt. # 43 at 14.  However, plaintiffs have not complied with
     Fed. R. Civ. P. 56(d).  The court notes that the order staying discovery based on qualified

23   immunity only applied to Larson and Cook. Dkt. # 29.  Nevertheless, plaintiffs do not identify
     any specific discovery they need to oppose summary judgment against Riordan. Dkt. # 43 at 14.

24   Accordingly, the court properly grants summary judgment with respect to defendant Riordan.
     Fed. R. Civ. P. 56(e).

25       [9] The court notes that plaintiffs' voluntary settlement of the civil action, while he was

26   represented by counsel, forecloses plaintiffs' argument that he was deprived due process to a
     hearing.  There is no evidence in the record that Mr. Anderson was coerced or forced to settle the

27   civil action.  Counsel's hyperbolic argument, of course, is not evidence.

violation of city code.[10]  Additionally, the United States Supreme Court has refused to hold that all release-dismissal agreements are invalid.  *Town*, 480 U.S. at 393.  Given the cases that have followed *MacDonald* and the factually distinguishable circumstances, the court finds that the constitutional right was not clearly established.

### 3.   Municipal Liability

A municipality or other local government may be liable under 42 U.S.C. § 1983 if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.  *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978)).  However, local governments are responsible only for their own illegal acts under section 1983.  *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)).  Local governments are not vicariously liable under section 1983 for actions of their employees.  *Id.*  "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury."  *Id.*  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id.*

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of official government policy."  *Id.*  A local government's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact to be properly considered a policy or

---

[10] The *MacDonald* court also noted the professional responsibility rules that prohibits a lawyer from threatening to present criminal charges solely to obtain an advantage in a civil matter.  *Id.* at 376.  The court notes that since *MacDonald* was decided, the ABA has expressed cautious approval of the practice of seeking a release of civil liability from a defendant under court supervision.  *See Moen*, 150 Wn. 2d at 229 n.2 (citing ABA Standard for Criminal Justice: Prosecution Function and the Defense Function 3-39(g), 70-78 (3d ed. 1993)).

1    custom that is actionable under section 1983.  *Id.*  Deliberate indifference is a stringent

2    standard of fault, requiring proof that a municipal actor disregarded a known or obvious

3    consequence of his action.  *Id.* at 1360.  A city's policy of inaction in light of notice that

4    its program will cause constitutional violations is the functional equivalent of a decision

5    by the city itself to violate the Constitution.  *Id.*  A pattern of similar constitutional

6    violations by untrained employees is ordinarily necessary to demonstrate deliberate

7    indifference for purposes of failure to train.  *Id.*

8           The court notes that it has already found that the individual KC Defendants have

9    absolute prosecutorial immunity.  The court has also found that the facts as shown by

10   plaintiffs do not make out a constitutional violation with respect to the individual

11   Bellevue Defendants.  However, even if the court found a constitutional violation,

12   plaintiffs' section 1983 claim against the municipalities still fail.

13          Plaintiffs first argue that additional discovery is needed to determine whether the

14   municipal defendants are directly liable because of deliberate indifference.  Dkt. # 40 at

15   22-23, # 43 at 15-16.  Plaintiffs identify a spreadsheet of claims against the King County

16   Prosecutors Office labeled civil rights violation or abuse of process, but for which no

17   details were provided about what the claim actually involved or how it was resolved.

18   Dkt. # 40 at 22.  The court notes that the order staying discovery did not apply to King

19   County, except to the extent that discovery requests would require personal knowledge or

20   consultation of documents in the personal control of Cook or Larson.  Plaintiffs have not

21   explained why they did not pursue this discovery against King County, and they have not

22   met the requirements of Fed. R. Civ. P. 56(d).  *See Tatum v. City & County of San*

23   *Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) (district court did not abuse discretion by

24   denying request for continuance because non-moving party failed to satisfy the

25   requirements of Rule 56(f)).  Additionally, plaintiffs have received discovery that

26

27

1  indicates that there is no relevant policy or practice that could have inflicted the

2  constitutional injury alleged.  *See* Dkt. # 41-1 at 23-25 (Ex. 7 to Shea Decl.,[11] Interrog.

3  Nos. 4-6); # 44-1 at 35-41 (Ex. 9 to 2d Shea Decl., Interrog. Nos. 4, 6-9, 12).   Plaintiffs

4  received the discovery responses from the City of Bellevue and King County in July and

5  August 2011, respectively.  Dkt. # 50 (Kerslake Decl.) ¶ 5; # 41 at 3 (Shea Decl.) ¶ 3, Ex.

6  7.  There is no evidence that plaintiffs contacted either defendant with respect to any

7  responses it believed to be inadequate.  Accordingly, the court denies plaintiffs' apparent

8  request for additional time to complete discovery.

9      Plaintiffs also argue that the municipalities are directly liable to Anderson due to

10  ratification.  Dkt. # 40 at 23-24; # 43 at 16-17.  With respect to King County, plaintiffs

11  argue that Larson had final policy-making authority.  Dkt. # 40 at 23-24 (citing Dkt. # 27-

12  3 at 46, 48; # 28 ¶ 10).  The e-mail relied on by plaintiffs is an e-mail from Cook to Mr.

13  Aoki that states:  "To make a long story short, I've staffed the situation with my

14  supervisor and we are going to dismiss at his next hearing with the language proposed by

15  the city.  We will be re-filing within the statute of limitations in the event restitution is

16  not paid or an order to pay restitution remains unresolved."  Dkt. # 27-3 at 46, 48 (Ex. 5

17  to Cook Decl.).  The paragraph relied on in Larson's declaration states:

18      Anderson was represented in the criminal case by attorney Russell Aoki.
19      During the course his [sic] work, I was informed that Mr. Aoki asked if the
        County would consider dismissing the charges against Anderson in favor of
20      civil proceedings the City of Bellevue was pursuing.  Mr. Aoki had
        indicated to the deputy prosecutor directly responsible for the case, Julie
21      Cook, that Anderson's best chance for paying restitution to the City was if
22      his liability insurance applied to the civil claim.  Anderson's attorney was
        concerned that a criminal conviction could deprive him of that insurance.
23      Based on these concerns, and in pursuit of making the victim whole, I

24

25      [11] The court does not have before it the actual interrogatories and requests for production
26  to which King County responded because only the answers were provided.  The court also notes
    that King County's responses are not signed or dated, and there is no certificate of service.
27  However, plaintiffs' counsel represents that the responses were received in August 2011.

agreed to allow the criminal conviction to be dismissed with the option of re[-]filing if restitution was not paid.  I do not recall reviewing the precise language used in the dismissal order.  Since this lawsuit was filed I have reviewed the language and would have approved it if I was asked at the time.  I do recall that when I approved dismissing the criminal charges I believed we were acquiescing to the specific request from Anderson's attorney to dismiss in favor of a civil settlement.

Dkt. # 28 (Larson Decl.) ¶ 10.

However, this evidence does not suggest or create an issue of material fact with respect to whether Larson had "final policy-making authority."  *See Pembaur*, 475 U.S. at 483 ("Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.").  As the Chief Criminal Deputy, Larson's job responsibilities include making decisions on charging, supervising, guiding, and sometimes participating in plea and trial strategies.  Dkt. # 28 (Larson Decl.) ¶ 3.  However, decision-making authority with respect to charging or case strategies is not the same as "final policy-making authority" for purposes of section 1983 municipal liability.  *See Delia v. City of Rialto*, 621 F.3d 1069, 1084 (9th Cir. 2010).  Nothing in the record even remotely suggests that Larson had final policy-making authority.

With respect to the City of Bellevue, plaintiffs claim that Riordan, as the City Attorney, ratified Zakrzewski's actions.  Plaintiffs cite to *Botello* for the proposition that a principal district attorney can be a final policymaker for the municipality with respect to the conduct of criminal prosecutions.  Dkt. # 43 at 16-17.  Plaintiffs are correct to the extent that some states grant final policy-making authority to a principal district attorney.  *See Botello*, 413 F.3d at 979 (noting that the Ninth Circuit has held that, under Nevada law, principal district attorneys are final policymakers for the municipality with respect to the conduct of criminal prosecutions).  However, plaintiffs have not directed the court to

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT- 16

any legal authority that grants the City Attorney final policy-making authority, or any

evidence that would suggest that Riordan actually had final policy-making authority.

Accordingly, plaintiffs' section 1983 claim against the municipalities also fail.

**B.   Plaintiffs' State Law Claims**

King County has not specifically addressed plaintiffs' tort claims of negligent

training and/or supervising, abuse of process, and outrage in its memoranda.[12]  However,

it has argued that the individual KC Defendants are entitled to prosecutorial immunity.

Prosecutors acting in a quasi-judicial capacity for acts done in their official capacity are

immune from liability.  *Creelman v. Svenning*, 67 Wn. 2d 882, 884, 410 P.2d 606 (1966).

*See also Anderson v. Manley*, 181 Wn. 327, 331, 43 P.2d 39 (1935); *Gilliam v. Dep't of

Soc. & Health Servs.*, 89 Wn. App. 569, 582, 950 P.2d 20 (1998).  A prosecutor's

absolute immunity from tort liability extends to the governmental employer.  *Creelman*,

67 Wn. 2d at 885.  The court has already found that the individual KC Defendants are

entitled to absolute prosecutorial immunity.  Accordingly, the court finds that the

absolute prosecutorial immunity extends to King County with respect to plaintiffs' tort

claims of negligent training and/or supervision, abuse of process, and outrage.

1.     Negligent Training and/or Supervision

It appears that City of Bellevue has conflated plaintiffs' section 1983 claim and

plaintiffs' negligent training and/or supervision claim in its memoranda.[13]  Dkt. # 31 at

14-16.  Nevertheless, the court is unaware of any legal duty to train assistant city

attorneys or assistant prosecutors on any legal issues.  Additionally, the public duty

doctrine provides that "no liability may be imposed for a public official's negligent

conduct unless it is shown that 'the duty breached was owed to the injured person as an

---

[12] The court notes that the KC defendants addressed these claims individually during oral
argument.

[13] The court notes that the City of Bellevue addressed the negligence claim during oral
argument.

individual and was not merely the breach of an obligation owed to the public in general.'" *Taylor v. Stevens County*, 111 Wn. 2d 159, 163, 759 P.2d 447 (1988).  During oral argument, the court asked plaintiffs what specific legal duty was owed to them individually, as opposed to the public in general.  Plaintiffs responded that the duty was the right to proceed with a fair impartial civil trial pursuant to the city code in the civil action.  Plaintiffs have not provided the court with any legal authority that supports such a purported legal duty.  Additionally, even if such a legal duty did exist, it would be a duty to the public in general.  Accordingly, the court finds that the City of Bellevue is entitled to summary judgment on plaintiffs' negligent training and/or supervision claim.[14]

Accordingly, the court dismisses plaintiffs' claim for negligent training and/or supervision.

**C.    Abuse of Process**

The elements of a claim for abuse of process are (1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process, and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings.  *Mark v. Williams*, 45 Wn. App. 182, 191, 724 P.2d 428 (1986).  The crucial inquiry is whether the judicial system's process, made available to insure the presence of the defendant or his property in court, has been misused to achieve another, inappropriate end.  *Batten v. Abrams*, 28 Wn. App. 737, 745, 626 P.2d 984 (1981).

The undisputed facts demonstrate that both the KC Defendants and the Bellevue Defendants were entitled to pursue criminal prosecution and civil enforcement actions, respectively, against Anderson.  The Bellevue Police Department referred the file on Anderson to the King County Prosecutor for filing charges of first degree malicious mischief and first degree theft.  Dkt. # 28 (Larson Decl.) ¶ 5.  Larson, in consultation with

---

[14] Even if the court had not found that absolute prosecutorial immunity applies to King County, it would adopt the same reasoning to dismiss plaintiffs' tort claims against King County.

1    his staff, decided the evidence "arguably supported two charges, but the evidence best

2    supported a charge of second degree theft." *Id.*  The KC Defendants believed that the

3    evidence indicated that Anderson sold the logs from trees that were cut from city property

4    for a profit and kept the money for himself. *Id.* ¶¶ 5, 7.  Larson decided that Anderson

5    should be charged with second degree theft. *Id.* ¶ 7.  This decision was a discretionary

6    decision made in consultation with his staff and in his role as Chief Criminal Deputy

7    Prosecutor. *Id.*  Additionally, the City of Bellevue decided to pursue civil remedies

8    against Anderson for removing the trees from city property pursuant to BCC 3.43.335.[15]

9    Dkt. # 32 (Zakrzewski Decl.) ¶ 7.  These facts are not in dispute.

10          Plaintiffs argue that Zakrzewski used Anderson's criminal prosecution to extract

11   payment in the civil enforcement action. Dkt. # 43.  The court is not persuaded by the

12   legal authority cited by plaintiffs.  In *Donohue v. Burd*, 722 F. Supp. 1507, 1521 (S.D.

13   Ohio 1989), the court stated:  "A criminal prosecution is intended to bring a person who

14   has committed a crime to justice and not to aid in the collection of a civil debt; therefore,

15   <u>an arrest with the objective of forcing payment of money</u> is a perversion of the objective

16   intended by the law."  (emphasis added).  There, an attorney who was elected judge of

17   the municipal court ("Burd") personally guaranteed a bank loan which cost him $17,500

18   on default. *Id.*  Burd filed civil suit to enforce two hold-harmless agreements, but the

19   defaulter informed him that he was financially unable to pay the $17,500, and the civil

20   suit was stayed as a result of a bankruptcy petition that had previously been filed. *Id.* at

21   1512, 1521.  Burd later persuaded a prosecutor to bring charges against the defaulter by

22   making allegations of impropriety that had not previously been alleged in his civil

23   complaint. *Id.* at 1513-14.  After the Grand Jury returned an indictment for a third degree

24   felony for grand theft, Burd informed the prosecutor that he did not want the defaulter to

25

26          [15] The court notes that Anderson disputes that the trees were removed with his knowledge
      or approval.  Regardless, the City of Bellevue was entitled to initiate the civil enforcement
27    proceeding.  *See* Dkt. # 32 (Zakrzewski Decl.) ¶¶4-9.

1    go to jail, but that he only wanted his $17,500. *Id.* at 1515. The court found that under
2    this fact pattern, plaintiff had proven the first element for his abuse of process case. The
3    facts in that case stand in stark contrast to the facts in this case.

4          Here, there is no evidence that Anderson was arrested with the objective of forcing
5    payment of money of a civil debt. Plaintiffs do not present any evidence that disputes the
6    fact that the Bellevue Defendants were entitled to pursue a civil action against them, that
7    the KC Defendants were entitled to charge Anderson with second degree theft for selling
8    the logs and keeping the money for himself, or that the KC Defendants could re-file the
9    criminal charges at any time. Indeed, during oral argument, plaintiffs conceded that the
10   KC defendants had probable cause to file the criminal charges. The statement in the
11   order of dismissal that charges will be re-filed if restitution is not paid in accordance with
12   the civil code does not raise an issue of material fact with respect to the first element.
13   Regardless of whether Anderson paid restitution or not, the KC Defendants could have
14   pursued criminal charges since a plea agreement was never reached. It was their leniency
15   and discretion that allowed Anderson to escape criminal prosecution.

16         Accordingly, the Bellevue Defendants are entitled to summary judgment on
17   plaintiffs' claim for abuse of process.

18   **D.   Outrage**

19         The tort of outrage requires (1) extreme and outrageous conduct, (2) intentional or
20   reckless infliction of emotional distress, and (3) actual result to plaintiff of severe
21   emotional distress. *Kloepfel v. Bokor*, 149 Wn. 2d 192, 195 (2003). The tort of outrage
22   does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or
23   other trivialities. *Id.* at 196.

24         Faced with the facts as described above, the court finds that no reasonable jury
25   could find that any of the conduct alleged by plaintiffs was sufficiently extreme to result
26   in liability.

27

**E.      Attorney's Fees**

Attorney's fees for prevailing defendants in a 42 U.S.C. § 1983 action may be awarded in the court's discretion where the court finds that the plaintiff's action was frivolous, unreasonable, or without foundation.  42 U.S.C. § 1988; *Fox v. Vice*, 131 S.Ct. 2205, 2213 (2011).

The court finds that plaintiffs' action is frivolous and without foundation.[16] Accordingly, the court GRANTS defendants' request for attorney's fees.  Defendants shall calculate their reasonable attorney's fees and request payment from plaintiffs no later than two weeks from the date of this order.  The parties shall meet and confer over any dispute no later than four weeks from the date of this order.  If the parties are unable to resolve their dispute, defendants may file a motion for attorney's fees no later than five weeks from the date of this order in accordance with the Local Civil Rules.  The court will award additional attorney's fees in connection with that motion if any party takes a position that is not substantially justified.

## IV. CONCLUSION

For all the foregoing reasons, the court GRANTS Bellevue Defendants' and KC Defendants' motions for summary judgment.  Dkt # 25, #31.  The Clerk of Court is ORDERED to enter judgment against plaintiffs and in favor of defendants.

Dated this 23rd day of March, 2012.

The Honorable Richard A. Jones
United States District Judge

---

[16] The court notes that Mr. Anderson received the benefit of having criminal charges dismissed, of not admitting liability for insurance purposes, of paying less than treble damages through voluntary settlement, and now, of the statute of limitations expiring on the criminal charges.